```
                                                    CLERK'S OFFICE U.S. DIST COURT
                                                         AT ROANOKE, VA
                                                              FILED
```

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

APR 29 2008

JOHN F. CORCORAN, CLERK
BY: /s/ Moody
    DEPUTY CLERK

| | | |
|---|---|---|
| **WILLIAM MERRITT SAUNDERS,** | ) | |
| Plaintiff, | ) | Civil Action No. 7:08cv00293 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **CHRISTOPHER R. WEBB,** | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | United States District Judge |

Plaintiff William Merritt Saunders has filed this pro se action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Plaintiff, presently an inmate at Blue Ridge Regional Jail ("Blue Ridge") in Lynchburg, Virginia, alleges that his security level is unconstitutional because it is based upon an escape that he committed "30 years ago." Plaintiff seeks $50,000.00 in damages and to be transferred to a Virginia Department of Corrections ("VDOC") facility. Upon review of the complaint and the documents plaintiff has submitted in support thereof, the court concludes that plaintiff has not stated a claim upon which relief can be granted and, therefore, will dismiss the complaint pursuant to 28 U.S.C. § 1915A(b)(1).[1]

I.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48

---

[1] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted. The court adds that plaintiff's grievance documentation suggests that he has not exhausted all available administrative remedies prior to filing the instant lawsuit, as required pursuant to 42 U.S.C. 1997e(a). Nonetheless, it is clear that plaintiff has failed to state a claim upon which relief may be granted, and the court will dispose of the complaint accordingly.

Dockets.Justia.com

(1988). A complaint fails to state a claim upon which relief can be granted when no relief is available under any set of facts that could be proved consistent with the allegations of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); see also Bell Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1965 (2007) (while the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"; the Court specifically explained, id., slip op. at 1973-74, that the Twombly analysis does not run counter to Swierkiewicz or impose a heightened pleading standard; the Court further noted, id. at 1973, n. 14, that "[o]n certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires"); Teachers' Retirement System of La. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007) (citing Swierkiewicz, 534 U.S. at 514, and stating that "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"). When dismissing a complaint for failure to state a claim upon which relief may be granted, courts may consider exhibits attached to the complaint, and where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)); see also Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir. 1995).

II.

A.

Plaintiff states that his assigned security level is unconstitutional because it is based upon an escape that he committed "30 years ago." Plaintiff's claim must fail. A prisoner does not have a constitutional right to be placed in a specific security classification. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976).[2] Custodial classifications do not create a major disruption in a prisoner's environment.[3] Sandin v. Connor, 515 U.S. 472, 486-87 (1995). In Sandin, the Supreme Court recognized that states may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardships on the inmate in relation to the

---

[2] Furthermore, the classification of inmates based upon their situs of incarceration does not employ a suspect class or burden a fundamental right, and thus it "is accorded a strong presumption of validity." Heller v. Doe, 509 U.S. 312, 319 (1993). "The only proper judicial inquiry is whether the [classification] serves a legitimate state [penological] interest and whether the challenged classification is rationally related to it." Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989) (citing McGinnis v. Royster, 410 U.S. 263, 270 (1973)). Even where similarly situated persons are treated differently, a state classification "that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for [it]." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993); see McGowan v. Maryland, 366 U.S. 420, 426 (1961) (noting that such classifications "will not be set aside if any state of facts reasonably may be conceived to justify it"). Moreover, the burden rests on the one challenging the [classification] to disprove the existence of every conceivable basis which might support it." Mitchell v. Comm'r of the Soc. Sec. Admin., 182 F.3d 272, 274 (4th Cir. 1999) (internal quotation marks omitted). The reasons need not actually motivate the state's conduct or action; they need only reflect a set of facts reasonably conceived to justify the action. See id. at 274-75. Nor must the state "articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification." Board of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 367 (2001) (internal quotation marks omitted).

[3] A mere chance or probability that a single factor will affect a future parole decision is too attenuated to invoke the Due Process Clause. Sandin v. Connor, 515 U.S. 472, 486-87 (1995). While the United States Court of Appeals for the Fourth Circuit has held that "in certain limited circumstances" an inmate may have a right "to have prejudicial erroneous information expunged from [his] prison files," the inmate must allege that particular information in his files is false, and that such information was relied upon to a constitutionally significant degree. Paine v. Baker, 595 F.2d 197, 201-203 (4th Cir.1979). Plaintiff concedes the accuracy of the escape information, and he does not dispute the veracity of any other information Blue Ridge authorities have used in determining his security classification.

ordinary incidents of prison life." Id. at 484. In order to show the deprivation of a liberty interest regarding custody classifications, an inmate must show either that the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, or that the confinement creates an atypical or significant hardship and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint. Id. at 483-84.

Here, plaintiff's security classification clearly does not exceed plaintiff's sentence in such an extreme way as to give rise to the protection of the Due Process Clause by its own force.[4] See Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship). Nor does an increase in security classification constitute an "atypical and significant" hardship in relation to the ordinary incidents of prison life, because a prisoner has no constitutional right to remain incarcerated in a particular

---

[4] See n.3, supra. Plaintiff is advised that an inmates' liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir.1991). Furthermore, such changes are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Id. Courts have held that placement and long-term detention in segregated confinement under Virginia's prison regulations does not give rise to any constitutionally protected liberty interest under Sandin. See, e.g., DeBlasio v. Johnson, 128 F. Supp.2d 315, 328-29 (E.D. Va. 2000), aff'd by Madison v. Johnson, 12 Fed. App'x. 149 (4th Cir. 2001) (unpublished). Thus, it is clear that plaintiff has no due process claim concerning the restrictions on his liberty imposed by his security classification.

prison or to be held in a specific security classification. See Moody, 429 U.S. at 88 n. 9, (rejecting a prisoner's argument that a pending warrant and detainer adversely affected his prison classification and qualification for institutional programs because not "every state action carrying adverse consequences for prison inmates automatically activates a due process right"); see also Meachum v. Fano, 427 U.S. 215, 225 (1976) (holding that "[n]either, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system," and noting that the fact "[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules"); but see Wilkinson v. Austin, 545 U.S. 209 (2005) (holding that transfer to a "supermax" prison "imposes an atypical and significant hardship under any plausible baseline," id. at 223, because "[conditions] at [the prison] are more restrictive than any other form of incarceration in Ohio," id. at 214).[5, 6]

---

[5] Plaintiff does not assert that state prison guidelines create a liberty interest triggering due process rights in the instant circumstances. At any rate, the Supreme Court has made it clear "that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wilkinson, 545 U.S. at 223 (quoting Sandin, 515 U.S. at 484). Even prior to the clarifications of Sandin and Wilkinson, however, it was clear that the Constitution does not vest in an inmate a liberty interest in retaining or receiving a certain custody or classification status. Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir.1994) (as long as the challenged conditions or degree of confinement is within the sentence imposed and is not otherwise violative of the Constitution, the security and custody classification of state prison inmates is a matter for state prison-official discretion whose exercise is not subject to federal procedural due process constraints).

[6] To the extent plaintiff's complaint could be construed as presenting a claim that his security classification violates the Equal Protection Clause, the claim must fail. To establish an equal protection violation, a plaintiff must first demonstrate that he or she has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination"; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir.2001). Plaintiff's conclusory allegations are
(continued...)

**B.**

Plaintiff asserts that he is permitted out of his cell for only four hours per day, and he asserts that these restrictions, to which he is subjected because of his security classification, constitute cruel and unusual punishment in violation of the Eighth Amendment. However, as the court has already observed, plaintiff has failed to allege facts sufficient to establish that the conditions or duration of his confinement pose an atypical and significant hardship. Furthermore, "the restrictive nature of high-security incarceration does not alone constitute cruel and unusual punishment." DeBlasio v. Johnson, 128 F. Supp.2d 315, 326 (E.D. Va. 2000) (citing In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471 (4th Cir. 1999) ("In re Five Percenters"); Sweet v. South Carolina Dept. of Corrections, 529 F.2d 854, 857 n. 1 (4th Cir. 1975) (en banc)); see also Beverati, 120 F.3d at 504 (holding that a six-month term in segregation did not impose an atypical hardship where the inmates alleged that their cells were infested with vermin and smeared with urine; that no outside recreation was permitted; that there were no religious services available; and that food was served in considerably smaller portions); Jackson v. Smith, 91 F.3d 130 (Table), 1996 WL 380254 (4th Cir. 1996) (unpublished) (affirming district court's judgment as a matter of law that confinement in isolation did not implicate a due-process protected liberty interest); Sadler v. Young, Civil Action No. 7:04cv00580, slip op. at *9 (W.D. Va. April 28, 2006) (finding that the

---

[6](...continued)
insufficient to state a claim of discriminatory intent. Plaintiff does not allege that he was treated differently from any other similarly situated prisoner nor does he show, or even allege, that any purported "unequal" treatment was the result of intentional or purposeful discrimination. See Chapman v. Reynolds, 378 F. Supp. 1137, 1140 (W.D. Va.1974).

6

imposition of disciplinary isolation does not amount to an atypical prison condition); Wells v. Mattern, Civil Action No. 7:06cv00223, slip op. at *2 (W.D. Va. June 12, 2006) (citing Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 642-43 (8th Cir. 1996) (holding that placement in punitive isolation was not an atypical and significant deprivation even though prisoner faced restrictions in mail, telephone, visitation, commissary, and personal-possession privileges)); Hutto v. Finney, 437 U.S. 678, 686 (1978) (finding that confinement to punitive isolation does not implicate cruel and unusual punishment unless conditions themselves are cruel and unusual); Sheley v. Dugger, 833 F.2d 1420, 1428-29 (11th Cir. 1987) (same); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981) (same).

Here, regarding plaintiff's restriction to four hours per day of out-of-cell time, plaintiff's allegations do not imply that he has suffered any constitutionally cognizable harm as a result of the four hours per day restriction. Severe restrictions on out-of-cell exercise for an extended period may constitute cruel and unusual punishment, if the restrictions result in harm to the prisoner's health. Sweet, 529 F.2d at 865-66. However, plaintiff's claim of being depressed as a result of being restricted to only four hours per day of out-of-cell time does not rise to that level. See In re Five Percenters, 174 F.3d at 471-72 (indefinite duration of the segregation does not render it unconstitutional; segregated confinement and its "inescapable accompaniments" – isolation from companionship, restriction of intellectual stimulation, and prolonged inactivity – do not per se amount to cruel and unusual punishment; depressed mental state, without more, is not sufficient to state a claim); see also Beverati, 120 F.3d at 504 (six-month term in segregation with no outside recreation permitted did not impose an atypical hardship).

In sum, plaintiff has not shown that his restriction to four hours per day of out-of-cell time as a result of his security classification subjects him to the deprivation of a basic human need. See In re Five Percenters, 174 F.3d at 471-72 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Nor does he contend that Blue Ridge subjects him to conditions that fail to provide him with adequate food, clothing, shelter, and medical care, or protection from harm. See id. at 472 (citing Farmer v. Brennan, 511 U.S. 825, 832 (1974)). Moreover, the "isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable." Id. at 472. And, significantly, plaintiff has not shown that defendant or any other officers at Blue Ridge has been deliberately indifferent to plaintiff's needs. See id. at 472 (citing Wilson v. Seiter, 501 U.S. 294, 303 (1991)).

### III.

For the foregoing reasons, plaintiff's complaint will be dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted. The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff.[7,8]

ENTER: This 29th day of April, 2008.

_____
United States District Judge

---

[7] To the extent the complaint could be construed to state an actionable claim against the defendants under state law, the court declines to exercise supplemental jurisdiction over such claims, pursuant to 28 U.S.C. § 1367(c).

[8] The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).